# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

DOUGLAS CONE and )
VICKI CONE, )
 )
    Plaintiffs, )
 )
v. ) Case No. CV415-163
 )
NATIONAL GENERAL )
ASSURANCE COMPANY, )
 )
    Defendant. )

## ORDER

Before the Court is an insurance coverage case arising from storm damage to the roof of a motor home purchased by plaintiffs Douglas and Vicki Cone from Camping Time RV Centers, LLC d/b/a Camping World RV Sales ("Camping World"). The Cones insured it with National General Assurance Company ("NGAC"), against whom they brought this action after it refused to pay their damage claim. They now move to: compel documents from NGAC, doc. 24; add Camping World as a party, doc. 27; and extend discovery. Doc. 34. NGAC does not oppose adding Camping World as a party, doc. 34 at 2 ¶ 3, so that motion is granted.

But it raises objections to the compelled discovery and insists that plaintiffs ran out the clock on extending the discovery period. Docs. 28 & 38; *see also* doc. 13 at 2 (discovery ended October 22, 2015).

## I. BACKGROUND[1]

The storm caused tree limbs to hit and damage the mobile home's roof. Rain water penetrated it, damaging the interior. NGAC's policy, plaintiffs contend, "covers water damage caused by a *sudden event*, in this case, the winter of February 12, 2014," doc. 25 at 2 (emphasis added), so NGAC must cover that loss. NGAC insists that water *seepage* from a defective roof is not a "sudden event." Doc. 24-1 at 14.

The claim took some time to adjust because of the way the loss occurred. At first plaintiffs believed they could repair their motor home's roof simply by replacing a roof vent. But later they "found that the roof lining was falling down from the ceiling." Doc. 25 at 2; *see also* doc. 24-1 at 23-25, 27-29 (D. Cone's correspondence reciting these details). So, they took it to the vehicle's vendor, Camping World. Camping World inspected it and told them that they had a property

---

[1] For the purpose of this Order, the Court will assume true facts taken from the records cited here.

2

damage insurance claim; it forwarded its findings to NGAC on May 13, 2014. Doc. 25 at 2.

On July 15, 2014, NGAC declined the claim because water seepage, not a "sudden event," caused the damage: "[T]he damage to your coach is due to long term water intrusion and not a covered peril listed in your policy." Doc. 25 at 2 (quoting doc. 24-1 at 14 (claim denial letter)). But the Cones persisted, so NGAC retained Auto Damage Appraisers ("ADA") to re-evaluate their claim. *Id.* ADA's August 11, 2014, repair report: "Tree limbs fell across roof panel, damaging roof vents. Owner replaced vents but it appears water had already seeped into ceiling -- damaging ceiling panels. . . ." Doc. 24-1 at 19.

The Cones read ADA's report as documenting the water damage as the result of a sudden event. Doc. 25 at 2. Douglas Cone threatened suit in a November 4, 2014 letter. Doc. 25 at 7; doc. 28 at 10 n. 3. On February 20, 2015, plaintiffs sent NGAC an O.C.G.A. § 33-4-6 demand letter.[2] Doc. 1-2 at 22 (their § 33-4-6, $28,000 demand letter). On

---

[2] "Under O.C.G.A. § 33-4-6, an insured is entitled to damages if the insurer's refusal to pay under an insurance policy is in 'bad faith.' Bad faith is a frivolous and unfounded denial of liability." *Murray v. Amex Assur. Co.*, 2007 WL 1582811 at * 3 (S.D. Ga. May 30, 2007) (quotes and cite omitted). "If an insurer had reasonable grounds to contest a claim, then it cannot be held liable under this section." *Id.*,

3

February 26, 2015, NGAC again denied their claim. Doc. 24-1 at 30-32. The Cones then filed this "bad-faith-denial" case. Doc. 1-2 at 3.

## II. ANALYSIS

Through discovery the Cones requested, but NGAC denied, a copy of NGAC's Claims Manual and All Written Policies and Procedures for 2012-2015, plus its entire claims file on their case.[3] Doc. 25 at 4. They thus move to compel. Federal Rule of Civil Procedure 26(b)(1) sets the general scope of discovery.[4] Rule 26(b)(2)-(4) delineates its limits. One

---

quoted in *Mahens v. Allstate Ins. Co.*, 2011 WL 1321578 at * 5 (N.D. Ga. Apr. 1, 2011).

[3] Plaintiff's Interrogatory Request No. 12: "A copy of any claims manual(s) or policies and procedures published or written by [NGAC] for the evaluation of claims for property damage of insured property during the years 2012-2015, including claims for diminished value." Doc. 24 at 2. They also seek: "A copy of all the activity notes and/or activity log concerning this claim." *Id.* at 4.

[4] *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."). And relevance is a broad concept, encompassing "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Healthcare Servs. Grp., Inc. v. Lower Oconee Cmty. Hosp.*, 2014 WL 4385714 at * 1 (S.D. Ga. Sept. 3, 2014) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 695-96 (S.D. Fla. 2007) ("Discovery should ordinarily be allowed unless it is clear that the information sought has no possible bearing on the claims and defenses of the parties or otherwise on the subject matter of the action."); *Robbins v. Owners Ins. Co.*, 2015 WL 3910920 at * 1 n. 3 (S.D. Ga. June 24, 2015).

legal encyclopedist summarizes the case law's evolution with respect to claims manuals and procedures:

> When relevant to the subject matter or issues in the insured's first-party bad faith case,[5] the insurer's standards for evaluating coverage and handling claims are everywhere discoverable. They are not ordinarily relevant in a contract case. These standards or procedures are customarily set forth in writing. They will usually be found in the insurer's practices and policies manuals for the handling of claims and in memoranda on the same subject which may or may not be part of the insurer's manuals.

LITIG. & PREV. INS. BAD FAITH § 12:10 (3d ed. July 2015) (footnotes omitted and added). Hence, "those portions of a first-party insurer's claims investigations manual which deal with the insurer's basis for denying the insured's claim have been held relevant and discoverable in a first-party bad faith case." *Id.* The Court has been shown no convincing reason why NGAC's practices and policies manual should not be divulged to the Cones, conditioned upon a Protective Order to protect any of NGAC's trade secret and other proprietary interests.

NGAC therefore must turn over to plaintiffs "[a] copy of any claims manual(s) or policies and procedures published or written by [NGAC] for

---

[5] This case is a first-party bad faith case. The first party is the party *on* the insurance contract with the insurer -- here, the Cones. For examples of a third-party case, where an insurer typically performs an investigation to defend its insured but then is sued by a third party who seeks that investigative information, *see Linthicum v. Mendakota Ins. Co.*, 2015 WL 4567106 (S.D. Ga. July 28, 2015); *State Farm Mutual Auto Insurance Co. v. Howard*, 296 F.R.D. 692, 695 (S.D. Ga. 2013).

the evaluation of claims for property damage of insured property during the years 2012-2015, including claims for diminished value." Doc. 24 at 2. Given the very liberal "discovery" standard noted *supra*, they are discoverable because one reasonably could find claims-adjusting guidelines, constraints and restraints relevant to, or otherwise informing NGAC's intent (*e.g.*, written procedures could "guide" adjusters on using "proper word usage" when examining property for coverage-excluding causes like "seepage"; how such procedures may have evolved contemporaneous to the Cones' 2014 claim also inform the bad-faith inquiry here, so the 2012-2015 time frame is reasonable).[6] However, plaintiffs and their counsel must sign a mutually negotiated (within 14 days of the date this Order is served), Consent Protective Order obligating them to protect NGAC's trade secrets and other proprietary data contained therein.

---

[6] The Court rejects NGAC's contention that this document request is overly broad because the Cones seek 2012-2015 claims manuals, while Cones' claim began in May, 2014 and was re-denied in 2015. Doc. 28 at 20. Insurers undoubtedly develop their practices over time, in response to litigation results and claims-handling experience. How an insurer guides its employees to adjust claims is undeniably relevant to a bad-faith determination (*e.g.*, it is easy to conjure verbal subtlety "guiding" one to spot "seepage," rather than sudden-event causation, especially where damage must in effect be reverse-engineered to explain its cause). The three year window in which this claim fell is reasonable because it discloses NGAC's "contemporary practices."

Compelling disclosure of an insurer's actual claims file depends on whether its contents were routinely generated or specially created in anticipation of litigation. *See Howard*, 296 F.R.D. at 695 ("[T]he work product doctrine typically does not protect documents from discovery unless they are prepared in *anticipation* of litigation, and since not every claim is expected to result in litigation, the privilege is not automatically conferred upon insurer claims files.") (emphasis original); *Holbourn v. NCL (Bahamas) Ltd.*, 305 F.R.D. 685 (S.D. Fla. 2014) (surveillance video that routinely recorded events onboard a cruise ship and showed passenger's fall after being knocked down when a lounge chair struck her leg was created in the ordinary course of business, and was thus not protected from discovery by work product doctrine in passenger's personal injury case).[7] Courts reject as conclusory, however, discovery

---

[7] That inquiry can be fairly nuanced and the lines drawn by the cases are not always clear. *Compare Carver v. Allstate Ins. Co.*, 94 F.R.D. 131, 135-36 (S.D. Ga. 1982) (documents emanating from claims representative's investigation were prepared "in anticipation of litigation," since at that point in investigation the likelihood litigation would ensue was substantial, and thus those documents fell within purview of work-product rule; however, standard reports referred to as "diary sheets" and "result forms" prepared at time when prospect of litigation was still inchoate could not be said to have been "prepared in anticipation of litigation" and were discoverable) *with Chambers v. Allstate Ins. Co.*, 206 F.R.D. 579, 590 (S.D. W.Va. 2002) (insurance representative's refusals to answer questions, during deposition in insured's action against homeowner's liability insurer, arising out of its failure to pay claim after insured's house was destroyed by fire, were proper if insured's questions inquired into

7

objections that do little more than claim that the material requested is "privileged," or "burdensome" to produce. *See, e.g., Rosen v. Provident Life and Accident Ins. Co.*, 308 F.R.D. 670, 681 (N.D. Ala. July 10, 2015) (citing *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985) (rejecting as conclusory objections that discovery requests for production of documents and interrogatories were unnecessary, too long, too broad, required too much time, were expensive to complete, were irrelevant, were improperly timed, and entailed unreasonable geographic compliance)).

Plaintiffs insist that they are entitled to the following from NGAC's claims file:

> Notes, correspondence, reports, e-mails and other materials in the claims file and adjuster's file may have information that goes to the very heart of Plaintiffs' claim. Attorney-client privilege does not protect those communications received in the ordinary course of business or any actions or opinions of the adjusters acting in the ordinary course of their business. Unless the withheld entries and documents contain privileged information between National General and its counsel, the material are discoverable.

Doc. 25 at 6-7.

---

thoughts, opinions, and mental impressions of representatives about insured's loss and claim, as they were protected by work product doctrine).

8

NGAC's "Redaction/Withholding Log for Documents" shows that it withheld an email because it contained information NGAC deemed "irrelevant and beyond the scope of discovery under Fed. R. Civ. P. 26(b)(1)."[8] It also is withholding two faxes, four "Claim Notes," and a "communication" -- all on "Work Product Privilege" and "Prepared in Anticipation of Litigation" grounds. Doc. 24-1 at 33-35 (NGAC's privilege log extending to materials dated from "06/11/14" to "05/20/15"). NGAC now clarifies that "the only documents [it] withheld or redacted on the basis of work product privilege were internal documents generated after July 15, 2014. . . ." Doc. 28 at 8.

NGAC cannot, plaintiffs insist, reasonably claim that it anticipated litigation, and thus block disclosure on privilege grounds, until November 4, 2014 at the earliest. Doc. 25 at 7. That's when Douglas Cone sent a certified letter to Camping World (acting as NGAC's agent, plaintiffs claim) in which he documented: (a) his claim that "water had apparently entered his motorhome through the 'busted vent' and leaked into his ceiling panels," doc. 25 at 3; and (b) his claim that no one had given him a copy of Camping World's report to NGAC. *Id.* at 7. That's

---

[8] This nondisclosure is not specifically challenged by plaintiffs, but one must wonder: If it is irrelevant to the Cones' claim, then what is it doing it in their claims file?

9

when he agrees "that the risk of litigation was substantial and imminent." *Id.*

The Court notes the temporal direction each side pushes for the proper "anticipation of litigation" date. An earlier date benefits NGAC (hence, more of its file will be privileged), while a later date benefits plaintiffs (less of NGAC's file will be privileged). NGAC pegs the "anticipation" date at July 15, 2014, when it first denied the Cones' claim. Doc. 24-1 at 8; *see also id.* at 14 (the coverage denial letter). The Cones respond that, as of that day, they "were [still] doing all that they could to resolve the claim. [NGAC] had [even] retained an adjusting company [*i.e.*, ADA] to investigate the claim and so was continuing to evaluate the claim. The risk of litigation [at that point therefore] was not 'substantial and imminent.'" Doc. 25 at 8. Hence, they argue, that date should not apply because the parties were still attempting to resolve the coverage dispute. Indeed, the Cones did not even invoke O.C.G.A. § 33-4-6 until February 20, 2015. *Id.* at 7.

Pause must be taken to consider what in substance both parties urge: An objective standard for establishing the "anticipation of

10

litigation" benchmark for supporting an insurer's privilege claims.[9] That's sensible, since what the Cones or NGAC's insurance team on this case subjectively believed can easily be disputed as arbitrary and biased. And an objective standard relieves the Court from having to divine the subjective realizations of both individuals and *corporations*.

Objectively speaking, August 22, 2014 is the proper cut-off point for sustaining NGAC's anticipation of litigation, work-product objections.[10]

---

[9] An objective standard is articulated in *In re Maher*, 143 S.W.3d 907, 912 (Tex. App. 2004) (Texas law) ("A document is prepared in actual anticipation of litigation if: (1) a reasonable person would have concluded from the totality of the circumstances that there was a substantial chance that litigation would ensue (the objective standard); and (2) the party resisting discovery believed in good faith that there was a substantial chance that litigation would ensue and prepared the document(s) for the purposes of preparing for such litigation (the subjective standard).").

[10] Again, "work product" privilege applies in this context *when* an insurer reasonably anticipated litigation, *see Smith v. Scottsdale Ins. Co.*, 40 F. Supp. 3d 704, 722 (N.D. Va. May 16, 2014) (collecting cases), and there is no bright line:

> Often the "front end" of a claims file, typically generated only by adjusters and not lawyers, is *not* work product and thus no privilege applies. It is only when the adjuster, while investigating (adjusting) the claim, suspects the case will be litigated (*e.g.*, he discovers that the insured burned his own home down and now seeks to fraudulently collect on his fire insurance) -- and thus, lawyers will probably get involved -- that the privilege comes into play. At that point, after all, the insurer is anticipating litigation, and the law aims to protect the legal analysis of its adjusters and lawyers. That's why the fact and opinion impressions and observation of both attorneys and non-attorney personnel can be work product. Rule 26(b)(3). Otherwise, a routine claims file will be discoverable. *Atlanta Coca-Cola Bottling Co. v. Transamerica Ins. Co.*, 61 F.R.D. 115, 116-17 (N.D. Ga. 1972) (claims files were discoverable).

*Linthicum*, 2015 WL 4567106 at * 5. When is it reasonable to suspect a case will be litigated? Courts analyze the facts of each case while using phrases like whether

That is when Douglas Cone accused NGAC of wrongfully denying his claim, doc. 28 at 3; doc. 24-1 at 25 (his email to an NGAC representative: "I believe [NGAC] is denying this claim contrary to my stated insurance policy."). That "anticipation" date is more than fair to NGAC, especially since over a month earlier Cone told NGAC that he had contacted the Georgia Department of Insurance and received a complaint form to fill out. Doc. 28-1 at 5 ¶ 17 (the Cones argue that *that* was sufficient to cause a reasonable person to anticipate litigation). That announced contact *plus* Cone's August 22, 2014 accusation amply supports August 22, 2014 as an objectively reasonable "anticipation" date.[11]

---

litigation was the "primary motivating factor" in generating a document, or whether the document was created "because of" actual or expected litigation. *See e.g., Maher*, 143 S.W.3d at 912 ("For the privilege to apply, preparation for litigation must be the primary motivating purpose underlying the creation of the document."); *Wells Dairy, Inc. v. Am. Indus. Refrigeration, Inc.*, 690 N.W.2d 38, 47-48 (Iowa 2004) (if documents would have been created in essentially similar form irrespective of litigation, it cannot fairly be said that they were created because of actual or impending litigation, and documents would not be entitled to work-product privilege). Those semantic conceptualizations all involve an attempt to discern when an insured likely will resort to litigation. But given the sheer complexity of human perception and behaviors, line-drawing here at best will be imprecise. *See e.g., Meighan v. TransGuard Ins. Co. of Am., Inc.*, 298 F.R.D. 436, 448 (N.D. Iowa 2014).

[11] Plaintiffs say NGAC is entitled to no privilege claim until November 4, 2014, when Douglas Cone sent his suit-threatening letter to NGAC. Doc. 25 at 7. NGAC points out, incidentally, that he did not send it until November 13, 2014. Doc. 28 at 10 n. 3.

Plaintiffs' motion to compel on this issue is therefore granted in part: NGAC must produce any part of its claims file contents, generated up to August 22, 2014, that it has withheld on privilege grounds, for it is not objectively reasonable to claim anticipation prior to that day.[12] Nevertheless, there was nothing unreasonable about NGAC's position here, and NGAC's assertion that plaintiffs made no attempt to negotiate

---

[12] Citing out-of-state cases, NGAC argues that the Court should apply a rebuttable presumption -- that documents produced after the insurer formally denies a claim are presumed work product, though that's rebuttable. Doc. 28 at 7-8. Another court explains how that presumption has been applied, and there is not much to it:

> Documents in an insurer's claim file that post-date the insurer's final decision to deny coverage are not automatically afforded protection as attorney work product. At most, there is a "rebuttable presumption" that the documents are privileged. *Essex Builders Group*, 2006 WL 1733857 at *2 (citing *Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 663 (S.D. Ind. 1991)). The mere fact that a document in an insurer's claims file was created after the insurer denied coverage is not by itself sufficient to "permit a reasonable evaluation of whether these documents are legitimately being withheld from production." *Mosley v. American Home Assurance Co.*, No. 13–20259–CIV, 2013 WL 6190746, at *3 (S.D.Fla. Nov. 26, 2013).

*Nationwide Mut. Fire Ins. Co. v. Kelt, Inc.*, 2015 WL 1470971 at * 8 (M.D. Fla. Mar. 31, 2015). The Court has not located any Georgia state or federal cases that have applied this presumption, and NGAC evidently has not either – it cites none. Even were it applied here, there is no dispute that the Cones did not resort to litigation, in fact persisted in trying to resolve their claim up to if not beyond August 22, 2014, and NGAC stayed in that game. Indeed, it even hired an appraiser -- what an insurer would do to reassess a claim, if not compute a possible pay-out on the policy. That's enough to rebut the presumption and support the conclusion that NGAC did not anticipate litigation after its July 15, 2014 claim denial. If anything, it (by hiring ADA) signaled to the Cones that it was still in claim adjustment mode -- hence, that it might yet pay out on their claim. That, in turn, would signal plenty of insureds that it's not yet time to "call the lawyer."

a protective order for its claims manuals (doc. 28 at 19) has gone unrebutted (the parties are obligated to confer in good faith to avoid consuming judicial resources on discovery disputes).[13] Hence, no Fed. R. Civ. P. 37 fees are awarded on plaintiffs' motion to compel, nor vice versa.[14]

The Court also grants plaintiffs' motion to extend discovery. Doc. 34. Plaintiffs were awaiting this ruling so they could depose defense witnesses with the benefit of the withheld documents now ordered disclosed. Doc. 34 at 1; doc. 27 at 1-2. They also have now succeeded in adding Camping World as a party, and they cite to discovery needed from it. Doc. 34 at 2. Expert witness needs (plaintiffs may raise a negligence claim against Camping World) are also in play. *Id.*

---

[13] Local Rule 26.5(c) reminds attorneys "that Fed. R. Civ. P. 26(c) and 37(a)(2) require a party seeking a protective order or moving to compel discovery to certify that a good faith effort has been made to resolve the dispute before coming to court." "That rule is enforced." *Hernandez v. Hendrix Produce, Inc.*, 2014 WL 953503 at * 1 (S.D. Ga. Mar. 10, 2014). And the conference must be meaningful. *Hernandez v. Hendrix Produce, Inc.*, 297 F.R.D. 538, 540 (S.D. Ga. 2014); *State Farm Mut. Auto. Ins. Co. v. Howard*, 296 F.R.D. 692, 697 (S.D. Ga. 2013); *F.D.I.C. v. Bowden*, 2014 WL 2548137 at * 12 (S.D. Ga. June 6, 2014) ("In this context it makes sense to order a face-to-face meeting, with opposing IT staffs, given the sheer complexity of the ESI dispute before it.").

[14] The Court denies NGAC's request, doc. 28 at 22-25, because (a) it slipped it into a brief, not a motion; and (b) plaintiffs, who partially prevailed here, also were not unreasonable in the contentions that they advanced.

## III. CONCLUSION

Plaintiffs' motion to compel (doc. 24) is **GRANTED** in part and **DENIED** in part. The Court also **GRANTS** plaintiffs' unopposed motion to add Camping World as a party and amend their Complaint. Doc. 27. Finally, it **GRANTS** plaintiffs' motion to extend discovery. Doc. 34. Within 14 days of the date this Order is served, the parties shall present a revised Scheduling Order reflecting a 60-day extension of discovery and proportional recalculation of the remaining deadlines contained in the existing Scheduling Order, doc. 13. They also shall, within that same time period, generate and present the Consent Protective Order discussed above.

**SO ORDERED,** this 16TH day of November, 2015.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA